A01A2448, A01A2449. STEDMAN v. COTTON STATES
INSURANCE COMPANY; and vice versa.
(562 SE2d 256)

BARNES, Judge.

These consolidated appeals arise from the trial court's grant of two directed verdicts in this case involving insurance coverage for an automobile accident. Daniel Stedman was involved in an automobile accident and sought coverage under an insurance policy with Cotton States Insurance Company. Cotton States denied coverage to Stedman on the ground that his policy lapsed because he failed to pay the required premium. Stedman appeals the trial court's grant of a directed verdict in favor of Cotton States on his claim for bad faith penalties and attorney fees in Case No. A01A2448. Cotton States appeals the trial court's grant of Stedman's motion for a directed verdict in his favor on the issue of coverage under the policy in Case No. A01A2449.

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Carden v. Burckhalter,* 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994). On appeal, we conduct a de novo review and will uphold the grant of a directed verdict only if all the evidence demands it. Id.

Viewed in this light, the trial transcript shows that Stedman first purchased an automobile insurance policy from Cotton States in 1991 through an independent insurance agent, Jim Willis. On November 28, 1995, Stedman and his wife moved to Newark, Delaware, as a result of a job transfer.

On December 19, 1995, Stedman received a renewal declaration statement for the policy period December 16, 1995, to June 16, 1996, that stated in preprinted ink "THIS IS NOT A BILL" and "Declarations are provided at renewal for your information." On December 29, 1995, Stedman received two "lapse notices" and a bill from Cotton States in three separate envelopes. Both of the lapse notices stated: "Payment has not been received and your coverage has lapsed. Send payment immediately. Payment received too late to reinstate will be refunded by company check. Please disregard if payment has already been made." The bill stated that a minimum amount of $117 was "now due." On January 2, 1996, Stedman's wife sent a payment total-

ing $171[1] to Cotton States. Cotton States deposited this check on January 15, 1996, and it cleared on January 19, 1996. At some point after January 15, 1996, Cotton States refunded the $171 to Stedman.

On January 18, 1996, the day before the check cleared, Stedman was involved in a car accident, and his car was totaled. He pled no contest to a traffic citation, and the driver of the other car filed a lawsuit against him. According to Stedman, neither Cotton States nor his agent informed him before the accident that his insurance was cancelled and that it would not be renewed.

Stedman testified that, after the accident, he received a letter from Willis dated December 21, 1995, stating, "We have been advised by Cotton States . . . that the coverage on the above policy has *LAPSED DUE TO NONPAYMENT*. If you have already paid this premium, please give us a call so that we can check with the Company and make sure they have received your payment." Stedman also testified that he did not receive a bill for the December 16, 1995–June 16, 1996 policy period until after the accident. This bill stated that the payment should be mailed by December 11, 1995. A representative of Cotton States testified that they sent this bill to Stedman around November 27, 1995, and that it was returned to Cotton States by the U. S. Postal Service with the remark:

> Return To Sender
> No Forward Order On File
> Unable to Forward
> Return to Sender

On January 18, 1996, Mrs. Stedman called Willis' agency and asked about the status of their coverage. Stedman called again on January 19, 1996, the day after his accident, and asked Willis about his insurance coverage. According to Willis, he told both of the Stedmans that coverage could not be provided to them in Delaware and that they needed to obtain insurance there. After obtaining this information, Stedman told Willis about his accident the day before.

On July 4, 1996, a Cotton States claims adjuster sent a letter to Stedman stating:

> I recently received notice of a claim for an auto accident occurring on the date of loss above at your new home in the state of Delaware. Attached to this letter is a notice of cancellation effective due to nonpayment of premiums effective 12/16/95. Because your policy was not in force on the date of loss, we cannot extend coverage to you[ ] or anyone else for damages sustained at the time.

---

[1] She testified that she sent $171 instead of $117 because she "must have transposed the numbers."

The notice of cancellation enclosed with the letter was addressed only to the lienholder, not Stedman, and was dated December 26, 1995.

Stedman subsequently filed a complaint for declaratory judgment and breach of contract to (1) resolve whether he was insured by the Cotton States policy at the time of the accident, and (2) obtain compensatory damages for Cotton States' breach of contract. Stedman later amended his complaint to assert a claim for bad faith and attorney fees under OCGA § 33-4-6.

After all evidence was introduced by both parties during the trial, the trial court granted the two directed verdicts at issue in this appeal. It granted Cotton States' motion on the issue of bad faith penalties and attorney fees because Stedman failed to comply with the 60-day demand requirement of OCGA § 33-4-6. It granted Stedman's motion for a directed verdict on coverage because the policy automatically renewed by operation of law before Stedman received any notices from Cotton States.

### Case No. A01A2448

1. Stedman contends the trial court should not have directed a verdict on the issue of bad faith and attorney fees because the facts support the conclusion that (1) Cotton States did receive a demand for payment 60 days before the suit was filed, or (2) that Cotton States waived the demand requirement "because it did not intend to pay the claim in any event."

OCGA § 33-4-6 (a) provides that an insurer owes a bad faith penalty and reasonable attorney fees "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith. . . ." "As [this] section imposes a penalty, it is strictly construed ([cit.]); consequently, a proper demand for payment is essential for recovery. [Cit.]" *Howell v. Southern Heritage Ins. Co.*, 214 Ga. App. 536, 537 (1) (448 SE2d 275) (1994). "It has long been the law that in order to serve as a bad faith demand, the demand must be made at a time when immediate payment is due. [Cits.]" *Primerica Life Ins. Co. v. Humfleet*, 217 Ga. App. 770, 772 (1) (458 SE2d 908) (1995). An insured cannot legally demand immediate payment "if the insurer has additional time left under the terms of the insurance policy in which to investigate or adjust the loss." *Dixie Constr. Products v. WMH, Inc.*, 179 Ga. App. 658 (1) (347 SE2d 303) (1986). In order to recover under OCGA § 33-4-6, the insured must submit evidence at trial showing compliance with the statute's demand requirements. *Nat. Cas. Co. v. Borochoff*, 45 Ga. App. 745, 749 (3) (165 SE 905) (1932).

In this case, Stedman submitted no direct evidence that he demanded payment from Cotton States before filing suit. The evidence shows only that he notified the independent insurance agent of the claim the day after the accident, well before the time immediate payment could be due.

Stedman asserts that an earlier complaint he filed that was dismissed without prejudice before the complaint in this suit was filed should serve as a demand for payment from the insurance company. We disagree. The demand for payment is a prerequisite to filing suit against the insurer for bad faith, and we must strictly construe OCGA § 33-4-6. Thus, we cannot consider the filing of a lawsuit a proper demand for payment under OCGA § 33-4-6.

Stedman further contends that the jury could have inferred that Cotton States received a timely demand from Cotton States' July 4, 1996 denial letter. Again, we disagree. The letter makes no reference to a demand for payment and simply acknowledges receiving a notice of claim, which is not the same as a demand for payment. See *Guarantee Reserve Life Ins. Co. &c. v. Norris*, 219 Ga. 573, 575 (134 SE2d 774) (1964) (a proof of loss standing alone is not a demand for payment).

Finally, we find no merit in Stedman's waiver argument. An insurer's mere denial of a claim does not waive the statutory demand for payment requirement in OCGA § 33-4-6. *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F2d 940, 947 (11th Cir. 1986).

Based on the above, we affirm the trial court's grant of Cotton States' motion for directed verdict on the issue of bad faith damages and attorney fees under OCGA § 33-4-6.

2. In the alternative, Stedman argues that the trial court should have awarded attorney fees under OCGA § 33-7-15 (b.1) which provides: "In the event the insurer denies coverage and it is determined by declaratory judgment or other civil process that there [was] in fact coverage, the insurer shall be liable to the insured for legal cost and attorney's fees as may be awarded by the court." A "recovery of attorney fees under OCGA § 33-7-15 (b.1) is limited to those situations involving non-cooperation by an insured with his insurance company. [Cit.]" *Gibson v. Southern Gen. Ins. Co.*, 199 Ga. App. 776, 777 (2) (406 SE2d 121) (1991).

> [A]lthough the language of subsection (b.1) does not expressly limit recovery of attorney fees only to situations of non-cooperation by the insured, placement of the subsection in the context of OCGA § 33-7-15[, titled "Cooperation by insured with insurer in connection with defense of action or threatened action under policy,"] leads to the conclusion that

the legislature did intend to so limit the application of the subsection.

*Hall v. Canal Ins. Co.*, 195 Ga. App. 16, 17 (392 SE2d 340) (1990). Since this case was not predicated upon Stedman's failure to cooperate with Cotton States, the trial court properly denied a recovery of attorney fees under OCGA § 33-7-15 (b.1).

### Case No. A01A2449

Cotton States contends the trial court erred by granting Stedman's motion for directed verdict on the issue of coverage and denying its motion for directed verdict on the same issue. Cotton States claims the policy lapsed for nonpayment on December 16, 1995, and thus no coverage existed for Stedman's accident. According to Cotton States, it was not subject to the notice of nonrenewal requirements of OCGA § 33-24-45 (e) because it complied with the requirements of OCGA § 33-24-45 (f) (3). Subsection (e) specifies the particular method in which an insurer must notify an insured that it will not be renewing the insured's policy. "If the insurer does not . . . comply with the notice requirements of OCGA § 33-24-45, then the insured's policy is automatically renewed." *Ga. Mut. Ins. Co. v. Mims*, 187 Ga. App. 783, 784 (2) (371 SE2d 426) (1988).

Subsection (f) of OCGA § 33-24-45 provides that subsection (e) "shall not apply" if one of three conditions is met. Cotton States claims it met the following statutory condition: "The insurer having manifested its willingness to renew by delivering a renewal policy, renewal certificate, or other evidence of renewal to the named insured or his representative or by offering to issue a renewal policy, certificate, or other evidence of renewal or having manifested such intention by any other means." OCGA § 33-24-45 (f) (3).

The trial court granted Stedman's directed verdict motion based on its conclusion that our interpretation of these Code provisions in *Prudential Property &c. Ins. Co. v. Pritchett*, 169 Ga. App. 564 (313 SE2d 706) (1984), governs the outcome of this case. After reviewing the undisputed facts before us and our opinion in *Pritchett*, we agree with the trial court.

In *Pritchett*, we held "[t]he insurer's intent to renew cannot act to bar automatic renewal of the policy *unless* that intent to renew is communicated to *and received* by the insured *prior* to the expiration date of the policy." (Emphasis supplied.) Id. at 566 (1). In this case, the uncontroverted evidence at trial shows that Stedman received the renewal declaration statement three days *after* the policy expired. Thus, the policy was automatically renewed under subsection (e). Because the uncontroverted facts show that Cotton States failed to subsequently fulfill the cancellation requirements of subsec-

tion (e) before the accident, the trial court correctly concluded that Cotton States must provide coverage to Stedman. Id. at 566-567.

*Judgments affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 19, 2002.

*Thomas C. Rowsey,* for appellant.

*Temple, Strickland & Dinges, William A. Dinges, John C. Patton,* for appellee.